UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

KENNETH HASLINGER,

                          Plaintiff,                    **MEMORANDUM**
v.                                                     **OPINION AND ORDER**

WESTCHESTER COUNTY,                   7:18-cv-05619 (PMH)
CORRECTIONS OFFICER KEYONA
MAYS, DEPUTY COMMISSIONER
LEANDRO DIAZ, and COMMISSIONER
JOSEPH K. SPANO,

                          Defendants.
-----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Kenneth Haslinger brings claims against Westchester County (the "County"), Corrections Officer Keyona Mays ("C.O. Mays"), Deputy Commissioner of the Westchester County Department of Corrections Leandro Diaz ("Dep. Comm. Diaz"), and Commissioner of the Westchester County Department of Corrections Joseph K. Spano ("Comm. Spano") (collectively "Defendants"). Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment rights and asserts two claims for relief under 42 U.S.C. § 1983. The first claim for relief against all Defendants asserts that Plaintiff was deprived of his rights to (1) be free from cruel and unusual punishment, (2) due process of law, and (3) equal protection under the law. The second claim for relief asserts a municipal liability claim against the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

      By motion dated September 11, 2019, Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 19).

1

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

On June 20, 2018, Plaintiff commenced this action, and on December 26, 2018, Plaintiff filed an Amended Complaint. The facts recited below are taken from Plaintiff's First Amended Complaint. (Doc. 9, "FAC").

Plaintiff alleges that on April 22, 2018 he was admitted to Westchester County Department of Corrections ("WCDOC") at Valhalla as a pretrial detainee. *Id.* ¶ 10. Upon admission, C.O. Mays prepared a Medical Assessment Report and asked Plaintiff if he had any known enemies. *Id.* ¶¶ 11–12. Plaintiff told C.O. Mays he had an "ongoing issue" with Dennis Rooney ("Mr. Rooney") who was currently in the custody of the Yonkers Police Department and that Plaintiff believed Mr. Rooney was "likely headed" to WCDOC. *Id.* ¶ 13. Plaintiff requested that C.O. Mays issue a keep separate order which would prevent Plaintiff from being housed or put in the same area as Mr. Rooney. *Id.* Plaintiff alleges that C.O. Mays indicated in her report that Plaintiff had a hostile relationship with Mr. Rooney but failed to issue a protective order or include a note in the report that Mr. Rooney was likely on his way to WCDOC. *Id.* ¶ 16.

Two days later, Mr. Rooney was admitted to WCDOC and placed in the same housing area as Plaintiff. *Id.* ¶ 18. Plaintiff alleges that "[a]t first sight of [P]laintiff," Mr. Rooney attacked Plaintiff causing serious injuries. *Id.* ¶ 19. Plaintiff was then rushed to Westchester Medical Center where he received emergency treatment. *Id.* ¶ 20. On May 3, 2018, Plaintiff filed a grievance alleging that C.O. Mays ignored his request for a keep separate order which would have prevented Plaintiff from being housed with Mr. Rooney. *Id.* ¶ 21. Plaintiff's grievance and his subsequent appeal were both denied. *Id.* ¶¶ 22–23. When Plaintiff's appeal was denied, Assistant Warden

2

Francis Delgrosso ("Asst. Warden Delgrosso") allegedly stated that "[t]he Westchester County Department of Corrections had no way of placing a keep separate order with someone who is not presently incarcerated in our facility." *Id.* ¶ 24. Plaintiff asserts that Asst. Warden Delgrosso's statement amounts to an admission that the County "fail[ed] to have a policy in place concerning known enemies of inmates who are not in the Department's custody" and that the failure to adopt such a policy "was the direct and proximate cause of plaintiff's injuries." *Id.*

## STANDARD OF REVIEW

I.  <u>Fed. R. Civ. P 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal

3

conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II. Qualified Immunity Defense

While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 493 (S.D.N.Y. 2015) ("In order for the doctrine of qualified immunity to serve its purpose, the availability of qualified immunity should be decided 'at the earliest possible stage in litigation.'" (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991))). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435–36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich,* 718 F.3d 157, 166 (2d Cir. 2013)). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir.

4

2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an officer's belief that her action does not violate clearly established law is "objectively reasonable," she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also Ashcroft*, 563 U.S. at 743 ("[Q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments . . . [and] it protects 'all but the plainly incompetent or those who knowingly violate the law.'") quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

## ANALYSIS

I. <u>Claims Against Individual Defendants</u>

Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendants C.O. Mays, Dep. Comm. Diaz, and Comm. Spano (collectively "Individual Defendants") in their individual and official capacities and alleges that they were deliberately indifferent to Plaintiff's safety in violation of his Eighth and Fourteenth Amendment rights. FAC ¶¶ 27–31. For the reasons set forth below, Plaintiff's claims against the Individual Defendants are dismissed.

Defendants assert that the Individual Defendants are protected from liability by qualified immunity. (Doc. 21, "Defs.' Mot. to Dismiss" at 14). The Court agrees.

As to C.O. Mays, Plaintiff alleges that C.O. Mays did not issue a keep separate order after Plaintiff notified her that he had an ongoing issue with Mr. Rooney and failed to note in her report that Mr. Rooney was likely on his way to WCDOC. FAC ¶ 16. The Court finds that, based on the facts alleged in the complaint, C.O. Mays's conduct was objectively reasonable. As Plaintiff

alleges, *see id.* ¶ 24, WCDOC had no way of issuing a keep separate order with someone who was not presently incarcerated. Therefore, the Court can conclude, based on the face of Plaintiff's Amended Complaint, that C.O. Mays's decision to deny a keep separate order was objectively reasonable and in accordance with the policy that was allegedly in effect at WCDOC at the time Plaintiff was admitted.

As to Dep. Comm. Diaz and Comm. Spano, the essential factual allegation Plaintiff makes against these Defendants is that they "created and maintain[ed] the policies and regulations" which "resulted in plaintiff's injuries, including but not limited to the 'keep separate' policy that was in effect on the day that plaintiff was attacked by [Mr.] Rooney." *Id.* ¶ 25. The Court assumes at the motion to dismiss stage, as it must, that Defendants Diaz and Spano did, in fact, create and maintain WCDOC's keep separate policy. These Defendants entitlement to qualified immunity therefore does not turn on any factual dispute, but rather is purely a question of whether the law at the time Plaintiff was admitted to WCDOC clearly established that WCDOC's keep separate policy violated Plaintiff's safety under the Fourteenth Amendment.[1]

The Court is mindful that the "driving force" behind qualified immunity is "a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quoting *Anderson v. Creighton, 438* U.S. 635, 640 n.2 (1987)). Thus, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (quoting *Hunter*, 502 U.S. at 227). Therefore, where, as here, the Court draws every factual inference in favor of Plaintiff and finds that the question of a defendant's entitlement to qualified immunity is

---

[1] Plaintiff was a pretrial detainee at the time of the alleged misconduct and a pretrial detainee's failure to protect claim alleging unconstitutional conditions of confinement "[is] governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)

"purely the state of the law at the time of a defendant's allegedly tortious conduct so that the court can determine whether a reasonable state agent should have known that what he was doing violated the law," it is appropriate for the Court to determine on a 12(b)(6) motion to dismiss whether the defendants are entitled to qualified immunity. *See Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016), *aff'd*, 675 F. App'x 43 (2d Cir. 2017) (citing *Hyman*, 630 F. App'x at 41).

Plaintiff's complaint does not include any allegation that there is clearly established law holding that WCDOC's alleged keep separate policy was created or maintained in violation of pretrial detainees' Fourteenth Amendment rights. Additionally, the Court is aware of no statute or case law that indicates that WCDOC's keep separate policy was in violation of clearly established law. Therefore, the Court finds that Defendants Diaz and Spano did not violate clearly established law in creating and maintaining WCDOC's keep separate policy and that it is appropriate to determine that they are entitled to qualified immunity at the pleading stage. *Cf. Shannon v. Venettozzi*, 749 F. App'x 10, 12 (2d Cir. 2018) (affirming district court's 12(b)(6) dismissal on qualified immunity grounds because prison officials' conduct was not in violation of clearly established law).

Accordingly, the Court finds that the Individual Defendants have satisfied their burden of demonstrating that they are shielded from liability under the doctrine of qualified immunity.[2]

Additionally, the Court finds that Plaintiff's claims for relief against the Individual Defendants sued in their official capacities are in effect claims against the County and are therefore dismissed. The prison officials acting in their official capacity are simply agents of the County rendering Plaintiff's official-capacity claims against the Individual Defendants unnecessary and

---

[2] The Individual Defendants also argue that they were not personally involved in the conduct that led to Plaintiff's injuries. Defs' Mot. to Dismiss at 11–13.  Because the Court finds that qualified immunity is a complete defense and dismisses the claims against the Individual Defendants on that ground, the Court does not address Defendants' personal involvement argument.

7

redundant of Plaintiff's claims against the County. *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself . . . 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 691 n.55). Accordingly, all of Plaintiff's claims against the Individual Defendants are dismissed.

## II. Claims Against Westchester County

Plaintiff's first claim for relief asserts that the County violated Plaintiff's rights under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. FAC ¶¶ 27–31. This claim for relief is duplicative of, and intertwined with, Plaintiff's second claim for relief asserting *Monell* liability against the County. *See White v. Cty. of Dutchess*, No. 15-CV-8744, 2016 WL 4449720, at *3 n.3 (S.D.N.Y. Aug. 23, 2016) (holding that *Monell* is the "vehicle for suing a municipality for its employees' constitutional violations" and "treat[ing] all claims against the City and County as *Monell* claims"). Therefore, the first claim for relief brought against the County is dismissed.[3]

Plaintiff's second claim for relief alleges *Monell* municipal liability against the County pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the Court finds that Plaintiff has plausibly alleged that the County maintained a keep separate policy, practice, or custom that could have caused a violation of Plaintiff's constitutional rights and therefore the Court denies Defendants' motion to dismiss as to the second claim for relief.

---

[3] In addition to alleging that Defendants were deliberately indifferent to Plaintiff's safety, FAC ¶ 31(A), Plaintiff's first claim for relief also alleges a due process violation, *id.* ¶ 31(B), and an equal protection violation, *id.* ¶ 31(C). There are no facts in Plaintiff's complaint which permit a free-standing due process violation. Rather the due process violation is part and parcel of Plaintiff's claim that Defendants were deliberately indifferent to his safety. *See Grant v. Hogue*, No. 17-CV-3609, 2019 WL 3066378, at *5 (S.D.N.Y. July 12, 2019) ("Failure-to-protect claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment"). Regarding Plaintiff's equal protection claim, not a single sentence in Plaintiff's complaint contains allegations sounding in equal protection—much less any allegations sufficient to determine whether a plausible equal protection claim for relief exists.

In *Monell*, the Supreme Court held that a municipality can be liable under § 1983 if a Plaintiff proves that "action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. To hold a municipality in at the motion to dismiss stage, a Plaintiff must plausibly allege and ultimately prove three things: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983)).

Proof of the existence of a municipal policy or custom is required because a plaintiff must demonstrate that "the municipality took some action beyond merely employing the [allegedly] misbehaving officers." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) (quoting *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985)). There are several ways in which a Plaintiff can demonstrate that an official policy or custom existed including:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Id.*

A finding that the Individual Defendants enjoy qualified immunity does not necessarily insulate the County from municipal liability. Second Circuit precedent makes clear that "municipal liability for constitutional injuries may be found to exist even in the absence of individual liability." *Golodner v. City of New London*, 443 F. App'x 622, 625 (2d Cir. 2011) (*citing Barrett v. Orange Cty. Human Rts. Coalition*, 194 F.3d 341, 350 (2d Cir. 1999)); *see also Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at \*10 (S.D.N.Y. Mar. 31, 2009) ("[T]he Second Circuit has

9

held that granting an individual officer qualified immunity does not dispose of the issue of municipal liability." (citing *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001))). This may be the case when the Court finds "that the plaintiff's injuries are not solely attributable to the actions of the named individual defendants," *Kaminski v. City of Utica*, No. 10-CV-0895, 2012 WL 4486074, at *8 (N.D.N.Y. June 28, 2012), *report and recommendation adopted*, No. 10-CV-0895, 2012 WL 4486071 (N.D.N.Y. Sept. 27, 2012) (quoting *McCoy v. City of New York*, No. 7-CV-4143, 2008 WL 3884388, at *1 (E.D.N.Y. Aug. 13, 2008)), but rather are the result of "the combined acts or omissions of several employees acting under a governmental policy or custom," *Rutigliano v. City of New York*, 326 F. App'x 5, 9 (2d Cir. 2009) (quoting *Barrett*, 194 F.3d at 350).

Mindful of these guiding principles, the allegations in Plaintiff's Complaint concerning the three prongs of *Monell* municipal liability must be examined seriatim.

First, Plaintiff's complaint alleges the existence of two separate, but related, municipal policies:

> 33. Defendant WESTCHESTER COUNTY has created and maintains a policy at the Westchester County Department of Corrections that violates the civil rights of individuals in its custody by refusing to issue keep separate order [sic] for inmates if their enemy or assailant is not incarcerated at the time of their admission. Through such a policy, individuals in custody are exposed to preventable harm.
>
> 34. At all times relevant to this complaint defendant WESTCHESTER COUNTY through its agent, the Westchester County Department of Corrections, had in effect a policy, practice, and custom of denying keep separate orders to individuals whose stated enemies were not already in the custody of the WCDOC.

FAC ¶¶ 33–34. Plaintiff appears to frame the first identified policy as WCDOC's official policy while the second policy is framed as a practice or custom that constitutes a policy. At this early juncture, the Court's analysis does not turn on which theory of *Monell* liability Plaintiff ultimately wishes to pursue after discovery, as the Court finds that Plaintiff has adequately and plausibly pled

the existence of a municipal policy under either theory. Plaintiff alleges that he was told by Asst. Warden Delgrosso during the appeal of his grievance that "[t]he [Westchester County] Department [of Corrections] had no way of placing a keep separate order with someone who is not presently incarcerated in our facility." FAC ¶ 24. Therefore, the Court finds that Plaintiff has plausibly pled the existence of a policy, and, at this time, it is a distinction without a difference whether the policy communicated to Plaintiff by Asst. Warden Delgrosso is WCDOC's official policy or a custom or practice so widespread so as to constitute a policy.

While Defendants are correct that ordinarily, "[a] single incident . . . [is] insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation," *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002); *see also* Defs' Mot. to Dismiss at 7, where, as here, Plaintiff's Complaint provides "allegations of fact tending to support" the existence of a policy, the Court finds that Plaintiff has adequately pled the first prong of *Monell* municipal liability. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)).

Defendants' reliance on cases asserting that a plaintiff must do more than allege a single incident to demonstrate a municipal policy are distinguishable from the set of facts alleged herein. In *City of Oklahoma City v. Tuttle*, for example, the Court held that Plaintiff had failed to demonstrate that the City had an inadequate policy of training and supervising police officers based on a single incident of excessive force. 471 U.S. 808, 821 (1985) (finding that it was improper for the trial court to state that "the jury could 'infer,' from 'a single, unusually excessive use of force . . . that it was attributable to inadequate training or supervision amounting to deliberate indifference or gross negligence on the part of the officials in charge.'"). Unlike the plaintiff in

11

*Tuttle*, Plaintiff here has sufficiently alleged facts for the Court to infer that the identified policy existed at WCDOC. Clearly, the allegation is that all pretrial detainees are subject to these policies or customs; and, at least by inference, that others have been injured as a result thereof. In *Carno v. United States*, the plaintiff alleged that Westchester County maintained an unconstitutional policy or custom regarding how inmates with burns were treated and the Court dismissed the complaint finding that the plaintiff "ha[d] not pleaded anywhere in his complaint that there was any policy or custom related to how inmates with burns were treated." No. 17-CV-7998, 2019 WL 2287966, at *13, (S.D.N.Y. May 28, 2019) *reconsideration denied sub nom. Carno v. Correct Care Inc.*, No. 17-CV-7998, 2019 WL 3080834 (S.D.N.Y. July 12, 2019). Here, by contrast, Plaintiff has alleged with specificity two municipal policies based on information communicated to him by a prison official. *See* FAC ¶ 24. Therefore, given the facts in the case at bar, the Court finds that it is not necessary for Plaintiff to identify, at the pleading juncture, which of the other inmates were allegedly harmed by WCDOC's policy. Plaintiff has satisfied his burden of pleading the existence of a municipal policy.

Second, the Court must determine whether Plaintiff has plausibly alleged a causal connection between the identified policy and the alleged civil rights violation. While Defendants argue that "Mr. Rooney, not the DOC's 'keep separate' policy, was the cause of Plaintiff's injuries," Defs' Mot. to Dismiss at 6–7, "[c]ausation is generally a question of fact . . . ." *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 396 (S.D.N.Y. 2016) (citing *Peacock v. City of Rochester*, No. 13-CV-6046, 2016 WL 2347448, at *8 (W.D.N.Y. May 4, 2016)). Plaintiff alleges that while he told WCDOC officials that Mr. Rooney was a known enemy, Mr. Rooney was nonetheless placed in the same housing unit as Plaintiff when Mr. Rooney was admitted to WCDOC two days after Plaintiff. FAC ¶¶ 16–18. Plaintiff further alleges that "[a]t first sight of [P]laintiff, [Mr.] Rooney

12

viciously attacked and seriously injured plaintiff." *Id.* ¶ 19. The Court finds that Plaintiff has adequately pled that WCDOC's keep separate policy was a cause of Plaintiff's injuries. Therefore, Plaintiff has satisfied his burden of pleading a causal connection between the identified policy and his injuries.

Third, Plaintiff must demonstrate that he was denied a constitutional right. *See Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 550 (S.D.N.Y. 2014) ("Absent an underlying constitutional violation, a *Monell* claim cannot lie.") (citing *Bolden v. Cnty. of Sullivan,* 523 Fed. App'x 832, 834 (2d Cir.2013)). Plaintiff alleges that he was deprived of his rights under the Eighth and Fourteenth Amendments "[t]o be free from cruel and unusual punishment resulting from deliberate indifference to his safety." FAC ¶ 31.

"Prison officials are constitutionally required to 'take reasonable measures to guarantee the safety of the inmates,' in particular, 'to protect prisoners from violence at the hands of other prisoners.'" *Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832–33 (1994)). However, while prison officials do have a duty to protect prisoners from violence at the hands of other inmates, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Fair v. Weiburg*, No. 02-CV-9218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006) (quoting *Farmer*, 511 U.S. at 834).

Plaintiff was a pretrial detainee at time of his alleged injuries. *See* FAC ¶¶ 10–11. A pretrial detainee's failure to protect claim alleging unconstitutional conditions of confinement "[is] governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell*, 849 F.3d at 29 (citing *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003)). Under the Fourteenth Amendment, a pretrial detainee

can demonstrate that prison officials failed to protect the detainee by showing that (1) "the inmate [was] incarcerated 'under conditions posing a substantial risk of serious harm;' and [(2)] the prison official showed 'deliberate indifference to inmate health or safety.'" *Rembert*, 2014 WL 3384629, at *5 (quoting *Farmer*, 511 U.S. at 834). The first prong of this test is objective and requires that a plaintiff show that his conditions of confinement "pos[ed] an unreasonable risk of serious damage" to his health or safety. *Darnell*, 849 F.3d at 30; *see also Constant v. Prack*, No. 16-CV-3985, 2019 WL 3287818, at *6 (S.D.N.Y. July 19, 2019) (holding that under the first prong a plaintiff must show that "he or she was 'incarcerated under conditions posing a substantial risk of serious harm'" (quoting *Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007))). The second prong of the test requires that the plaintiff demonstrate that prison officials "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F. 3d at 35.

Analysis is required concerning the final *Monell* prong: the two elements of a Fourteenth Amendment failure to protect claim. First, Defendants argue that Plaintiff has inadequately alleged that his conditions of confinement posed a substantial risk of serious harm to his safety. Defs.' Mot. to Dismiss at 9–10. Plaintiff alleges that upon admission to WCDOC he told C.O. Mays that he had an "ongoing issue" with Mr. Rooney and that Mr. Rooney was "likely headed" to the WCDOC. FAC ¶ 13. Plaintiff further alleges that he informed C.O. Mays that Mr. Rooney "was known in the Yonkers community as a violent and volatile individual" and that Plaintiff believes that prison officials were familiar with Mr. Rooney "due to numerous incidents in which [Mr. Rooney] attacked staff and inmates while housed at WCDOC during periods prior to plaintiff's

arrival." *Id.* ¶¶ 14–15. Plaintiff alleges that when Mr. Rooney was admitted to WCDOC "[a]t first sight of plaintiff, [Mr.] Rooney viciously attacked and seriously injured plaintiff by fracturing his eye socket and causing multiple fractures to plaintiff's neck in addition to other injuries." *Id.* ¶ 19. Plaintiff was then immediately rushed to Westchester Medical Center where he received emergency treatment." *Id.* ¶ 20. The alleged severity of the injuries inflicted upon Plaintiff by Mr. Rooney demonstrates that Plaintiff has plausibly pled that he faced a substantial risk of serious harm. *See Constant*, 2019 WL 3287818, at *6 (looking to the severity of the injury to determine that the Plaintiff faced a serious risk of substantial harm).

Next, Defendants argue that prison officials were not deliberately indifferent to Plaintiff's safety. Defs.' Mot. to Dismiss at 10. Plaintiff alleges that C.O. Mays denied issuing Plaintiff a keep separate order, and, while C.O. Mays noted on Plaintiff's Medical Assessment Report that Plaintiff had a hostile relationship with Mr. Rooney, she did not note that Plaintiff told her that Mr. Rooney was likely headed to WCDOC. FAC ¶ 16. Despite Plaintiff's identification of Mr. Rooney to C.O. Mays, when Mr. Rooney was admitted to WCDOC just two days later he was placed in the same housing unit as Plaintiff and attacked Plaintiff "[a]t first sight" causing serious injuries. *Id.* ¶¶ 18–19. Plaintiff has plausibly alleged that, despite alerting prison officials to the threat posed to Plaintiff by Mr. Rooney, prison officials, in following the County's currently lawful keep separate policy or custom as defined herein, may have recklessly failed to act with reasonable care to mitigate the risk that Mr. Rooney posed to Plaintiff. The Court therefore finds that Plaintiff has adequately pled that the County, through the implementation of WCDOC's keep separate policy or custom, may have been deliberately indifferent to Plaintiff's safety. *See Darnell*, 849 F. 3d at 35; *see also Garcia v. Witkowski*, 988 F. Supp. 2d 360, 362 (W.D.N.Y. 2013) (finding that prison officials were not deliberately indifferent because "[p]laintiff d[id] not allege that

15

defendants had actual knowledge of any specific threat to his safety"). Clearly, the Court is mindful that discovery is necessary to make an actual finding herein. For now, the pleading is sufficiently plausible.

Thus, the Court finds that Plaintiff has plausibly alleged all three prongs of a *Monell* municipal liability claim for relief against the County.[4] Accordingly, Defendants' motion to dismiss is denied as to the second claim for relief against the County.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss the first claim for relief is granted as to all defendants. Defendants' motion to dismiss the second claim for relief against the County is denied.

The County shall file an answer to Plaintiff's complaint within fourteen days of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

The Clerk is instructed to terminate the motion (Doc 19).

**SO ORDERED:**

*[signature]*

Philip M. Halpern
United States District Judge

Dated: New York, New York
      April 29, 2020

---

[4] While the qualified immunity doctrine serves to protect the Individual Defendants from liability, that immunity does not extend to the County. *See Askins v. Doe No. 1*, 727 F.3d 248, 253–54 (2d Cir. 2013) ("[T]he entitlement of the individual municipal actors to qualified immunity because at the time of their actions there was no clear law or precedent warning them that their conduct would violate federal law is . . . irrelevant to the liability of the municipality.").